IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RODNEY D. ENGLERT,                        Civil No. 05-1863-AA
                                          OPINION AND ORDER
        Plaintiff,

    vs.

HERBERT LEON MACDONELL, TERRY
L. LABER, BARTON P. EPSTEIN,
PETER R. DE FOREST, STUART H.
JAMES, and PATRICIA LOUGH,

        Defendants.
_____

Helen C. Thompkins
Law Office of Helen Thompkins PC
333 S. State Street, Suite V 121
Lake Oswego, OR  97034
        Attorney for plaintiff

Eric Neiman
Heather J. Van Meter
Williams Kastner & Gibbs, PLLC
888 S.W. Fifth Ave., Suite 600
Portland, OR  97204
        Attorney for Herbert
        MacDonell

AIKEN, Chief Judge:

        Plaintiff Rodney D. Englert filed a complaint for

1   - OPINION AND ORDER

defamation and libel against several people including defendant
Herbert MacDonell.  Defendants then filed a special motion to
strike based on Oregon's "Anti-SLAPP" (strategic litigation
against public participation) law, O.R.S. §§ 31.150-31.155.  On
May 10, 2006, this court granted in part and denied in part the
Anti-SLAPP motion dismissing several defendants.  The parties
then engaged in numerous discussions and settlement conferences
in an attempt to resolve this case.  Defendant MacDonell now
moves for summary judgment.  That motion is granted and this
case is dismissed.

<u>BACKGROUND</u>

The parties are very familiar with the background of this
case.  Moreover, the May 10, 2006, opinion of this court set
out an extensive factual background, therefore, most of it will
not be repeated here.

In Englert's defamation action against MacDonell, he
alleges the American Academy of Forensic Science ("AAFS")
ethics complaint, filed against Englert, included information
provided by MacDonell, among others. This court found in 2006,
and finds again after a detailed review of the record, that
MacDonell did not sign the defendants' AAFS submission, nor
does the record include any affidavits submitted by MacDonell
in support of the defendants' ethics complaints.  I find
nothing in the record to support MacDonell's involvement or
participation in the ethics complaint.

Englert does, however, provide a series of letters
authored by MacDonell beginning in 1993 accusing Englert of
being a "Frankenstein monster," "forensic whore," "liar for

hire," and a "charlatan" relating to his work as a blood
spatter expert.

Further, the brother of a murder victim, William Crank,
states that in April 2000, MacDonell began an unsolicited
conversation with him in which he attacked and criticized
Englert, who had testified as an expert witness in Crank's
sister's homicide trial.

Prosecuting Attorney Jim. J. Thomas in Blaine County,
Idaho recounts a similar event in March 2005, in which
MacDonell telephoned him to accuse Englert of perjury, saying
that Englert would say anything in court if paid, and that
MacDonell would do whatever he could to get Englert out of the
forensic expert business.  Around that same time, the Idaho
Attorney General's Criminal Division in Boise notified Englert
of documents left throughout the courthouse stating: "To whom
it may concern – if you would be interested in Rod Englerts
[sic] real background, training and credibility you should
contact Herbert Leon MacDonell. . ."

Finally, a police sergeant in Huntington, West Virginia
states that during a class MacDonell was teaching on blood
patterns in Corning, New York, MacDonell called Englert a
"charlatan," a "liar," and "untrustworthy."

In September 2005, Englert received notice of many of
MacDonell's writings.  Englert filed this action on November 3,
2005, amending it November 9, 2005, to allege that defamatory
statements by MacDonell (and others) were published and/or
republished in Multnomah County, Oregon, bringing him into
public contempt and ridicule, and diminished in the esteem,

3    - OPINION AND ORDER

1    respect, goodwill and confidence in which he had been held.

2                              **STANDARDS**

3         Summary judgment is appropriate "if the pleadings,

4    depositions, answers to interrogatories, and admissions on

5    file, together with the affidavits, if any, show that there is

6    no genuine issue as to any material fact and that the moving

7    party is entitled to a judgment as a matter of law."  Fed. R.

8    Civ. P. 56©.  Substantive law on an issue determines the

9    materiality of a fact.  <u>T.W. Electrical Service, Inc. v.</u>

10   <u>Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 630 (9th

11   Cir. 1987).  Whether the evidence is such that a reasonable

12   jury could return a verdict for the nonmoving party determines

13   the authenticity of a dispute.  <u>Anderson v. Liberty Lobby,</u>

14   <u>Inc.</u>, 477 U.S. 242, 248 (1986).

15        The moving party has the burden of establishing the

16   absence of a genuine issue of material fact.  <u>Celotex Corp. v.</u>

17   <u>Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party shows

18   the absence of a genuine issue of material fact, the nonmoving

19   party must go beyond the pleadings and identify facts which

20   show a genuine issue for trial.  <u>Id.</u> at 324.

21        Special rules of construction apply when evaluating

22   summary judgment motions: (1) all reasonable doubts as to the

23   existence of genuine issues of material fact should be resolved

24   against the moving party; and (2) all inferences to be drawn

25   from the underlying facts must be viewed in the light most

26   favorable to the nonmoving party.  <u>T.W. Electrical</u>, 809 F.2d at

27   630.

28

4    - OPINION AND ORDER

**DISCUSSION**

Statute of Limitations

MacDonell seems to argue for a second time that Englert's claims fall outside the one year statute of limitations under O.R.S. 12.120(2). In his initial motion to dismiss, MacDonell asserted this claim alleging that Englert relied only on a 1993 letter MacDonell admits having written. Englert's response, however, then clarified that additional incidents were at issue. Englert provided affidavits demonstrating MacDonell made defamatory communications within a year of Englert filing his lawsuit (November 3, 2005). Further, under Oregon's discovery rule, a claim for defamation based on statements made in confidential documents does not accrue until plaintiff discovers its contents. Holdner v. Oregon Trout, 173 Or. App. 344, 351, 22 P.3d 244 (2001) (citing White v. Gurnsey, 48 Or. App. 931, 935-36, 618 P.2d 975 (1980)). Thus, as I ruled earlier, Englert's September 2005 discovery of MacDonell's older confidential communications falls within the statute of limitations under the discovery rule. Any claim by MacDonell regarding the statute of limitations is denied.

Defamation

A claim for defamation requires the plaintiff to present evidence establishing that the defendant published a defamatory statement about the plaintiff to a third person. Affolter v. Baugh Construction Oregon, 183 Or.App. 198, 202, 51 P.3d 642 (2002). "A defamatory statement is one that would subject another to 'hatred, contempt or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which

5   - OPINION AND ORDER

[the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other].'" Id. (internal citation omitted).  "Whether a statement is capable of having a defamatory meaning is a question of law for the court."  Simpson v Burrows, 90 F.Supp.2d 1108, 1126 (D. Or. 2000).

An allegedly defamatory statement must contain some factual assertion that is capable of being proven true or false.  Reesman v. Highfill 327 Or. 597, 603, 965 P.2d 1030 (1998).  Opinion statements are not provably true or false and are therefore not capable of a defamatory meaning.  Id. at 606. Similarly, for purposes of the First Amendment, "[t]he scope of constitutional protection extends to statements of opinion on matters of public concern that do not contain or imply a provable factual assertion."  Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995).  Slurs or name-calling are considered opinion statements.  See Simpson, 90 F.Supp.2d at 1126 ("a pervert, degenerate, or an immoral person," although rude and mean, were only rhetoric and "not the kind of ascertainable factual statements required to sustain a defamation claim.").

Englert's claim again MacDonell is based on the following communications:  (1) a 1993 letter to a Utah attorney; (2) a 1994 letter to a North Carolina attorney; (3) a 1998 affidavit signed by MacDonell and sent to a Washington prosecutor; (4) portions of a 1999 email to a Alabama forensic scientist; (5) an affidavit signed by William Crank regarding an April 2000 statement; (6) a 2000 letter addressed "to whom it may

concern;" (7) a June 2003 email to a New York attorney; (8) an
October 2003 email to a Washington attorney; (9) an unsigned
message posted in an Idaho courthouse; (10) an affidavit signed
by Jim J. Thomas about a March 2005 statement; (11) an
affidavit signed by David J. Castle about a September 2005
statement; and (12) a 2006 Indiana newspaper article.  The
court will review each of these twelve pieces of evidence in
turn as possible support for Englert's defamation claim.

The 1993 letter to a Utah attorney, and 1994 letter to a
North Carolina attorney do not contain any statements that
constitute defamation, i.e. probable false assertions. The
letters contain only statements of opinion. Regarding the 1999
partial email, I find no defamatory statements.  In fact, it is
difficult to discern much information about the email without
the context of the remainder of the email.  Regarding the Crank
Affidavit, I find no defamatory statement, particularly
considering it is difficult to discern any MacDonell statements
whatsoever from the affidavit.  With respect to the 2000 letter
addressed "to whom it may concern," it does not contain any
statements that constitute defamation.  Regarding the June 2003
email to the New York attorney, and the October 2003 email to
the Washington attorney, neither email contains any statements
that constitute defamation. Regarding the message in the Idaho
courthouse by an unknown author, plaintiff has no evidence or
information to prove that MacDonell authored or posted the
unsigned message in an Idaho courthouse.  MacDonell states that
he was not in Idaho at the time the message was posted and has
no information as to who create the document or how it got to

a courtroom in Idaho.  Nevertheless, even assuming the document
was authored by MacDonell, it contains no statements that would
constitute defamation.  With respect to the Jim J. Thomas
affidavit, it contains no quotes of statements by MacDonell
that constitute defamation.  Regarding the Castle affidavit,
first there is no evidence that MacDonell actually made those
statements, and second, to the extent that MacDonell made those
statements, the opinion statements found within are not
defamatory.  Finally, regarding the 2006 Indiana newspaper
article, MacDonell is not quoted in the article, nor does
Englert have any information or evidence that the reporter ever
talked to or obtained a quote from MacDonell.  I find no
evidence that MacDonell spoke to the reporter or caused any
statement by him to be published or republished in the article.
Moreover, Englert never requested the newspaper print a
retraction.  Or. Rev. Stat. 31.210 prohibits plaintiff from
recovering damages without first requesting a retraction from
the newspaper.

     Further, based on the record, the court finds that
plaintiff is a public figure.  As a public figure, plaintiff
must prove that MacDonell acted with actual malice in making
any statements about Englert. 'Actual malice' is defined as
making statements with knowledge, or reckless disregard, of
their falsity. New York Times v. Sullivan, 376 U.S. 254, 280
(1987); and Flowers v. Carville, 310 F.3d 1118, 1129 (9th Cir.
2002). Plaintiff has no evidence of any actual malice by
MacDonell.  Plaintiff fails to point to a single alleged
factual statement by MacDonell that plaintiff demonstrates is

8    - OPINION AND ORDER

false, or made with knowledge or reckless disregard of its falsity. I find no evidence in the record that MacDonell's statements were false factual assertions made with actual malice.

Finally, Englert has no evidence that he was damaged by any of these twelve items. Englert testified that the ethics complaint caused him to lose work on four cases (one case each in New York, Hawaii, Arizona and Wisconsin). Englert agrees that MacDonell did not submit an ethics complaint and was not involved in the ethics proceeding. Since Englert's only damage was lost work on four cases due to the filing of the ethics complaint that MacDonell had no part of, plaintiff has failed to identify any damages attributable to MacDonell.

None of the twelve documents at issue support plaintiff's claim of defamation against MacDonell. Therefore, MacDonell is entitled to summary judgment.

## CONCLUSION

MacDonell's Motion for Summary Judgment (doc. 117) is granted. The parties' request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this  6   day of July 2010.


                              /s/ Ann Aiken
                              Ann Aiken
                    United States District Judge

9    - OPINION AND ORDER